Good morning, your honors. Steve Mather appearing for Appellants Ronald and Margaret Isley. We believe this is an interesting case involving some interesting issues involving the interplay between the tax and bankruptcy areas of the law. And it would be a very interesting case if it were just based entirely on a typical bankruptcy case that involves a surplus bankruptcy estate, which is an important fact in this case. But in essence, what we really believe is that this involves misinterpretation by the district court of the effect of the settlement agreement in the bankruptcy proceeding. Before you get to the substance of it, and before we get to res judicata, why is the district court wrong in concluding that the Isleys as individuals can't seek a refund under the statute and it has to be the estate that seeks a refund under the statute? Well, I think the nub of the reason there is the estate had no interest in this refund. And I believe the settlement agreement effectively confirmed that there was no interest on behalf of the estate. And from a standing issue, if that's the issue to be addressed, only the Isleys stood to gain from the prosecution of this refund case. But if we're talking statutory standing rather than interest, which might convey Article 3 standing, you have to have a right under the statute to seek the refund. And the district judge read the statute as that the estate had standing under the statute to seek a refund and the Isleys did not. This is not a question whether the Isleys had some interest in it. I think they did. But the question is whether under the statute they had a right to seek a refund. Why is the district judge wrong on his reading of the statute? Well, I believe that he's wrong for at least two reasons. First, the district court judge seemed to be excessively interested in the concept, at least that's what I took it to be, the concept of who made the payment. In fact, who made the payment in this case, the payment was made from the assets of Ronald and Margaret Isley. It was made This money was never an asset. The money itself was never an asset of the estate. It didn't go through the estate. The settlement agreement itself in paragraph 8 establishes that the payment is to be made from the debtor, being Isley, to the Internal Revenue Service. And from a statutory standpoint, we believe that's all that's required. These were payments from the liquidation of the Isleys' assets directly to the Internal Revenue Service. And that's sufficient for statutory standing, if you will. Okay. Did the Isleys or the estate object to the IRS proof of claim? There was an objection at one point to the characterization of the proof of claim as secured versus unsecured. There was never an objection made to the amount of the claim until after the district court case was over. Now, essentially, we view the peculiar aspect of this case as a carve out of these issues from the bankruptcy proceeding. What the trustee was facing when they examined and finally examined the claims in this case was a situation in which they were convinced that there was going to be excess funds in the estate, regardless of any collections that were due to the asset that was the royalty interest that were the subject of the settlement agreement. That surplus estate would exist if the trustee could find a way to satisfy the tax claims, because the remaining claims in the estate were going to be less than the funds already on hand. So the trustee seized upon the of liquidating future revenue source, funds that were not yet in the estate, being the future royalty interests or payments on those interests, and as a way of collecting a fund that would essentially be set aside to satisfy the tax claims. There was a $2 million amount that was paid up front that satisfied the claims that the IRS had submitted. Well, now, the bankruptcy estate is still open, is that correct? I believe that it was closed at the time of the district court's decision. It was open at the time of the district court's decision. It has since closed. But we don't know anything about excess funds, because there's nothing in the record with respect to that, is there? There is nothing per se in the record, because this issue wasn't raised by the government and wasn't addressed by us, to be honest, in the proceedings below. There since has been a distribution to Mr. Isley in excess of $500,000 that were excess funds that existed at the time. And those amounts, in fact, have been paid over to the Internal Revenue Service. And somewhat ironically, in the context of this case, it was paid over and designated and the IRS accepted the designation of that payment and applied it in the manner that the Isleys had requested. Why is that ironic? Well, it's ironic because if you get beyond the preliminary procedural issues, the government's underlying argument on the merits is that there was no surplus proceeds in the New Jersey bankruptcy case back 15 years ago. Yeah, but those weren't designated. They were not designated, but the government's position is that they're involuntary payments, and involuntary payments under the government's rules are incapable of designation. So here we have in California the exact same surplus payment, and the IRS allows the designation. But, of course, in this case, we don't have a deceased taxpayer who was one of the three taxpayers in the New Jersey case, and for understandable reasons, I think they allocated it to the debt of the deceased taxpayer because they were unlikely to get any other money from him. Well, it's certainly understandable why they did what they did. I don't see any great conflict in the behavior in the two cases. Well, there is a conflict with the position they're taking in this case, which is that payment was an involuntary payment, and they shouldn't follow a taxpayer's designation if, in fact, it's an involuntary payment. But, of course, if you designate where they would do it anyway, they're likely to do it where they would do it anyway. Well, if you designate an involuntary payment, they won't follow it. Well, they have to send it somewhere, and if you designate an involuntary payment where they were going to allocate it anyway, they're probably going to allocate it exactly where they were going to do it, despite the fact you also designated precisely that. It could be, but usually the taxpayer designates it in a manner favorable to them, and the IRS ignores it on an involuntary payment and applies it to where they want. Counsel, maybe at this stage we ought to hear from the government, and then you can respond. You have plenty of time, if you want to reserve. Okay. That's fine. Thank you. May it please the Court, I'm Karen Gregory for the United States of America. This, in reality, is a very simple case. Ronald Isley is a serial tax avoider. He has been convicted of tax evasion. He did not appeal that conviction. He only appealed the length of his sentence. That appeal was originally scheduled for argument this morning, but was removed from the calendar. In his criminal case, he made many of the same arguments or similar arguments that are made in the instant case, and the jury rejected all of them. This case is just another manifestation of Mr. Ronald Isley's tax avoidance case. Yeah, but this case is a little more technical, is it not, because you've got standing issues and the proper applicant for a refund, all that sort of thing, which don't get into tax evasion. If you really boil it down to the heart of the Isley's claims, it's not that complex. In Ronald's case, you have a payment that was made to the IRS pursuant to an order of a bankruptcy court. That payment came out of assets of the estate. The paper trail of that check is really just a question of form over substance. In essence, the bankruptcy court allowed this transaction to essentially strip the IRS's lien off of these assets so that they could be conveyed to another entity, and as I understand it, then the assets were assigned to an Isley entity, so they kind of went back to him in some manner. But the amount paid to the IRS extinguished the claim, did it not? Exactly. And the amount paid to the IRS per order of the bankruptcy court established the amount of the IRS's claim, which is raised judicata here, and extinguished the claim. So to allow him to seek a refund under these circumstances would be a travesty, because it flies in the face of the whole purpose of our bankruptcy system, which is to resolve with finality the claims of creditors. All right. Now, you're getting to the merits, but what about this standing issue, this technical status issue? You heard Judge Fletcher's questions on that. With respect to Ronald or Margaret, because they're in different positions. Well, either or both. The payment that was made was from assets of the bankruptcy estate. Therefore, standing is in the trustee to seek a refund. And only in the trustee? And only in the trustee. As Kafka and Kavanaugh's treatise acknowledges, and a footnote discussing the Bruce case, there may be situations in which no one has standing. And that may seem bizarre on the surface, but in this case, it makes very good sense, because there was an agreement among the parties to resolve this issue. No one should be seeking a refund. This is not even decided. Now you're off into something else. I want to stick with Judge O'Scanlan's question, which is part of my earlier question. Am I right in my belief that the government did not make this statutory standing argument in front of the district court, and the district court came up with this argument on its own? Is that right? With respect to Ronald, yes. With respect to Ronald? Ronald. The government challenged Margaret standing below. Okay. Why didn't the government? I mean, if it's such a great argument, why didn't the government make the argument below? I don't know. The attorney who handled that case has left the government, so I'm not able to ask that. I won't inquire under the circumstances under which he left. But I think it was because of the way the transaction was structured, and he chose not, and having been, well, I'm not sure if he was the one who was involved in the bankruptcy case, so I shouldn't say that. But for whatever reason, he chose not to make that argument. And, you know, we won on race judicata, as we should again here. You know, the only part of this case, from the government standpoint, that bothers me is not any claim by Ronald, but claims by Margaret. Assume for a moment that Margaret is entitled to seek a refund, that is to say she's not barred by some statutory restriction on standing that only the estate can recover. I'm not asking you to concede that. I'm asking you merely to assume that. I think she's arguing that some of her assets were being used to satisfy some of his tax liability. Can you respond to that? Yeah. That is the heart of her claim. Yes. Her claim is that she has an interest here because of some sort of unquantified community, alleged community property interest in assets of the estate. Wasn't she an assinee of some of these assets as part of the divorce settlement? I'm getting to that. Okay. The divorce settlement recognizes two types of assets here. They're the songwriter royalties and the co-publishing royalties. In their briefs, she or her brief, she acknowledges that she waived the rights, her rights to the songwriter royalties. Those rights were, according to the property settlement agreement, but not according to any recorded lien that the trustee located, were secured. Her alimony payments were secured by the songwriter interests. Although this doesn't appear in the briefs here, it does appear in the record. Margaret was, in fact, a claimant in the California bankruptcy. She filed a claim for alimony. And that claim was ultimately paid in full with interest. And that can be judicially noticed. Excuse me. It's in the public record available on PACER in the trustee's final report. Page which? It's available on PACER in the trustee's final report. On PACER. Okay. So that disposes of the songwriting interest. She received, she filed a claim and received full payment. With respect to the co-publishing interests, the property settlement agreement does not establish any concrete rights in those agreements. I refer you to page E68 of the record excerpts. In this agreement, it says there were no co-publishing rights as of the date of this agreement. No co-publishing, what do you mean? There were none assigned to her? The rights didn't exist? What do you mean when you say that? The husband acknowledges under oath that he has no publisher's rights at this time, PSA. What it says is if, and that's a big if, she later discovers that he did have co-publishers' rights as of the date of this agreement, which predates the bankruptcy. This is the settlement agreement. The property settlement agreement. Then her right is to seek an equitable distribution. And that would only apply to songs written during the marriage. So now you have, this was 1996. You have a sale in 2000. Ronald continues to be active in the music business. She has, in order to make a claim and survive the standing challenge, she has to allege specific facts showing her interest here. This doesn't establish anything. She was a claimant in the bankruptcy. She could have sought an equitable distribution. She didn't. Furthermore, her attorney in the bankruptcy was the same attorney who wrote this property settlement. So really her claim is extremely tenuous. Then if you could... Now, let me stop you for just a moment, so I'll make sure I'm following you properly. But the arguments you just made here are arguments that are dependent upon material that's not in front of us. That is to say, you're saying, well, listen, her claim to the songwriter royalties, it might have been a good claim, but that was satisfied in the bankruptcy. And I've got nothing in front of me that tells me that that's so. You say I can look it up, but that was not in the papers that were presented to me. You're correct, Your Honor. And the fact that this claim was, refund claim, was brought while the bankruptcy was pending put us in the difficult position of having subsequent factual events that implicate what was argued here that were not available to us or known at the time of the briefing. So I understand what you're saying. I don't know how to resolve that dilemma. I don't think we can ignore that. Well, we could resolve it by saying, well, she has no standing. But if we don't do that, we could resolve it by saying res judicata. Could you address res judicata? I worry about res judicata because the footnote in the district court's opinion says, well, under California law and identity of interest, it's res judicata as to her. I don't know that there's identity of interest. And further, California res judicata law doesn't apply. It's federal res judicata law. Now, it may be that the identity of interest principle in California law is the same as federal. But nonetheless, I have trouble seeing the identity of interest. The government in its brief did not, as I recall, agree with that position of the district court. And in fact, going back to the property settlement agreement, the Isleys, by their own choice, sought to have and did have their property distribution resolved in the New Jersey Superior Court. And by its terms, the settlement agreement is governed by New Jersey law. New Jersey is not a community property state. So that's another proof that Margaret had to make to even get to showing that she had standing. Then now, this is standing as to the co-publisher royalties, or are you now talking songwriter? I would say, well, assuming that you have said I cannot rely on the actual facts of ultimately what happened to bankruptcy, I think that would be the case under either circumstance. Going back to the procedural issue, is the position of the IRS that the failure of the estate to file a claim is dispositive in this case? That was a position we took in our brief, and I don't think it was incorrect. Certainly at the time that this, that our brief was written, the bankruptcy was still open, and I think that was a good argument. But Ronald's claim still fails on race due to Cana, because he has repeatedly litigated in the bankruptcy court the issues of his, the same arguments that he's making in this refund claim, which is something that we pointed out in our Rule 28J letter, excuse me, that was filed recently. So with respect to Ronald, he loses no matter how you look at it. And Margaret does, too. Well, my concern is there are thresholds here. There are several steps of analysis, and it would be convenient, perhaps, to look at it at the very beginning, which is, was the right, did the proper entity apply for the refund? Nothing to do with the merits of whether the tax was owing or not, but who had standing to make the claim. And if that's the case, is there some IRS regulation that requires that in a situation like this, the entity that paid the tax in favor of an individual has exclusive right to file a refund claim? I've been puzzled by why, if it's the liability with respect to the individual which has been established, and the individual feels for whatever reason that maybe more than was necessary was paid, why can't that individual apply, file for the refund? I'm not aware of a regulation, but the Internal Revenue Code that provides the cause of action for seeking a refund says it can only be brought by the person who paid the tax. And the tax What's the code provision? What code section is that? I'm sorry. I'm drawing a blank on the provision. But it's in the code. Okay. It's in the code, and I believe it's in our brief. I apologize. I just don't want to give you the wrong number. In this case, the payment was made with assets of the bankruptcy estate. Okay. Whether or not Ronald wants that money back later on is not relevant to the interpretation of the statute.  So if someone voluntarily pays your taxes for you, you can't then try to get that money back. Only the person who made the payment can get it back. Even when there's a bona fide dispute as to whether the amount paid was wrong or excessive? Well, what's the harm to the taxpayer if no money was out of his pocket? I mean, the person liable for the tax, excuse me, not the person who paid. What's the harm to him when he's not out of pocket or anything? Well, we're talking about a bankruptcy here in which all of his assets are out of pocket. Well, actually, that's a different circumstance. And basically, the bankruptcy dovetails with the refund suit in this case. And because of the nature of the bankruptcy, the refund suit shouldn't even come into play because the taxpayer has an opportunity to litigate all that stuff in the context of the bankruptcy, which is what should have and actually was done here, and he lost. Well, and again, I'm less concerned with Mr. Isley than I am with the former Mrs. Isley. I mean, as I understand it, the core of her claim is some of her assets were used to satisfy his tax debt. How can I be sure that that didn't happen? She hasn't proven that it did. Standing is a jurisdictional issue. As a plaintiff, she has the burden of showing that she has standing. Wait a minute. That doesn't make any sense to me. All she has to do is to say, it's my money, I want it. And that says she has standing. Then she has to prove it. And she may not be able to prove that it's her money. But she's saying it's my money. Therefore, assume that she has standing under the statute to seek the refund. Now, my question to you is, how do we know that some of her money was not used to satisfy his tax debt? Because she hasn't established that it does. And the record doesn't show that it did, that she had any assets here. And how do we know that it doesn't show that she did? Are you now back to way studicata? What's your argument on this point? Well, listen, it's back to her surviving a motion for summary judgment. The government submitted the property settlement agreement, the asset sale agreement. None of those established any rights in Margaret. To defeat that motion, she has to allege specific facts. If she fails to do so, this is just some sort of vague claim. Then Rule 56 mandates summary judgment for the government on the issue of standing. She hasn't. There are no facts here establishing the amount of her rights or anything. All she has is a right to seek equitable distribution, which she did not do. So to not do that in bankruptcy and then try to do that in the guise of a refund suit is just crazy. Although at this point it sounds like you're sliding over into what happened in the bankruptcy suit after the record was closed here or perhaps didn't make it into the record in this case. Is that right? No. The record, whether before or after the bankruptcy was closed, the record doesn't show any rights. And in fact, that she may have. And in fact, the sale agreement in the bankruptcy says, with respect to co-publishing interests, the purchaser bears the cost and risk of determining whether the estate has a direct interest in the co-publishing rights and the extent thereof. That's E19. That doesn't establish the co-publishing rights are sold. It's an open question. There could be nothing that was conveyed here. The purchaser assumed the risk of paying for nothing. So what has she shown? As I understand your argument and as I understand the district court's order, you're now arguing a different ground for supporting it than the district judge relied on in his order. Is that right? I'm sorry. As I read the district court's order, he says, well, number one, you don't have a right to do it because the only entity that has a right to seek a refund is the estate. And number two, res judicata in any event. But your argument is yet something else. Yes. We don't agree with, as explained in our brief, we don't agree with the district court's statement that Margaret and Ronald had privity with respect to this debt. Because when you have joint tax liabilities, the individuals are looked at separately. And which leads me to the second part of what's happening with respect to her claim, which is that even if she could get over the standing issue, she hasn't shown that any of these underlying tax liabilities accrued because of income that she earned, which is the other thing that she has to satisfy in order to get a refund. So you have a whole bunch of years in the bankruptcy. No, I don't understand that last statement. Her argument, I think, is that he had this very large tax liability. She had her assets used to satisfy his tax liability. So it's not the question of what her tax liability is. It's the question of what his tax liability is and whether her funds were used to satisfy it. Am I missing something? That's the first step of the inquiry. And we think that she fails on that respect because she hasn't proven her case with respect to standing or with respect to her claim that part of that payment came from her. She hasn't presented evidence that the payment came from her, part one. Part two is even if she could somehow prove a claim, which is not done here, she still loses because she hasn't shown that she would be entitled to any refund, even if those were her assets. And I'm not suggesting that they were because there's no evidence that they were. Was she a party in the bankruptcy? She was a claimant in the bankruptcy. And that is in the record. It's not really obvious. But she and her attorney appear on the service list. When the assets were being marshaled by the bankruptcy court, the trustee and so on, were her assets traceable into the bankruptcy estate? Not in any way that appears in the record. Was she making a claim at the time? During the bankruptcy, was she making a claim that the assets that were being brought into the bankruptcy estate to pay claims were her assets? She never made such a claim. Her only claim was for alimony. Thank you, counsel. Your time has expired. Mr. Matthews, you have some reserve time. Thank you. Just to address one point briefly, the former U.S. attorney that not only failed to make the standing argument, but at the argument before the district court conceded that Ronald Isley had standing, he's no longer with the U.S. attorney's office because he's now a bankruptcy judge in the central district of California. It's somebody that knew from whence he spoke, we believe. Again, going back to the substance of this settlement agreement, I think the way this settlement agreement really should be viewed is effectively as an abandonment of the assets by the trustee. The trustee was implementing this settlement agreement to wash his hands of all of the tax matters in his suit. He had this asset that was the future co-publisher and songwriter royalties income stream that he didn't need because he already had more than enough money if he could take care of these taxes. So by coming up with a mechanism by which he could liquidate that future stream that he doesn't need and can effectively abandon, and then applying it to the taxes and leaving it to the debtor to take care of the tax issues, then the trustee can move forward and administer the remaining claims and the remaining assets and pay them off. You know, I don't see the harm to Mr. Isley, no matter, even if I agree totally with you. Now, this is with respect to Mr. Isley, not the former Mrs. Isley. I mean, money to satisfy his tax obligation was paid out of the bankruptcy estate by your own representation after, or maybe it was the government, I can't remember. It's been closed. He now has $500,000 back. That goes also to satisfy his tax obligations. I don't get it. What's he complaining about? He owed all this money. Some of it was paid through the bankruptcy estate. Some of it might have been his wife's. Why is he complaining about that? And then the money that comes back to him also goes to satisfy the tax. Our position on the underlying merits is that the major portion of the $2 million that was taken to pay his taxes was not due. It wasn't lawfully due. And that's what the substance of our refund claim is, is that the IRS, and this goes back to the prior bankruptcy, is that the IRS took his money out of the prior bankruptcy and paid his brother's taxes. That stuff is res judicata, it seems to me. That's what? That stuff seems to me, at least, to be res judicata, whether or not that was a valid tax debt. I don't believe that's res judicata at all because that money, again, was the excess money from the bankruptcy, the prior bankruptcy. It wasn't something that was handled in the bankruptcy or paid through the bankruptcy or on a claim in the bankruptcy. That was all dealt with separately. This was money left over that the trustee didn't know what to do with. I'm sorry. I've now lost your antecedents with the this's and the that's. What money are we talking about? When? What? There was $1.3 million plus that was left over at the end of the New Jersey bankruptcy after all of the claims had been paid. It was an excess collection in the New Jersey bankruptcy. Okay. And then what happened to that money? That money was paid by the trustee, we argue voluntarily, to the Internal Revenue Service, and the IRS took all that money and paid the brothers' taxes, even though our claim is that at least a third of that money was Ronald's money and should have gone to pay Ronald's taxes. Now, if that had been done, then the $2 million or most of the $2 million that was paid in the California bankruptcy wouldn't have been due. And so that was the basis of our refund claim is that we shouldn't have needed to take $2 million from Ronald's and Margaret's assets to pay that claim because they didn't owe $2 million. And that's the substance of the action. And so that's why we believe we had a valid claim, why we believed it was Ronald's claim. To be perfectly honest, I was the one that prepared and had the claims filed. We were representing Ronald. You said the claims filed. Which claims where? Okay. I'm sorry. The refund claims that are the subject of this appeal. I prepared and had filed the refund claims that were then denied by the IRS and became the basis of the refund. Is there any reason why the refund claim could not have been filed on behalf of the estate? It's possible that it could have been filed on behalf of the estate. But then we would probably be facing an objection from the government that the estate has no standing because the estate didn't need the money. I mean, they had no interest in the funds because there was already this surplus. So the estate had no interest in pursuing this. They may have lacked constitutional. The estate may have lacked constitutional standing because it had no interest in the outcome. What about Section 6402 of the Internal Revenue Code? I think this is the section that I'd asked your opposing counsel about. It says, in the case of any overpayment, the secretary may credit the amount of such overpayment, including any interest and so forth in respect of an internal revenue tax on the part of the person who made the overpayment, and shall, subject to certain subjections, refund any balance to such person. In other words, the person who made the overpayment. Correct. And our position is this was Ronald's taxes that was paid from the proceeds of the sale of Ronald's assets by Ronald. And I think that satisfies any requirement that you could have under Section 6402. Who wrote the check? This check was written by the, it was on the attorney trust account of the buyer. And under the settlement agreement that was approved by the bankruptcy court, it specifically states that the payment shall be from the debtor, Ronald, to the IRS. And the district court of the government just prefers to ignore that fact set forth in the settlement agreement. Now, that's an entity distinct from the bankruptcy estate. If I understood you correctly, you said the check was written by the attorney's trust fund of the buyer. The buyer. Now, the buyer is not the same as the estate, is it? The bankruptcy estate. The buyer is not the same as the estate. But this is a different entity entirely. The attorney was effectively functioning as an escrow, if you will, for the purpose of consummating this action. And so, therefore, the attorney's trust account check was paid instead of to Ronald, it was paid to the IRS as directed in the settlement agreement. Let's say the buyer purchased these royalties. Yes. So it's all sort of hypothecated into a single amount so that all the future stream comes to him. He then, but his purchase price, he then pays straight to the IRS on behalf of Ronald? The debtor. On behalf of the estate? Well, it's paid by the debtor according to the express terms of the settlement agreement. And that's in paragraph 8 of the settlement agreement. It says what was done. And certainly, I think, that has to satisfy the statutory requirement because, again, it's Ronald's assets or money being paid by Ronald to satisfy Ronald's tax. Let me go with you so far for purposes of assumption that Ronald does have standing to seek a refund from the IRS if in fact this is an overpayment, he should get some money back. Okay. His argument as to why he should get some money back is that that $1.3 million paid at the end of the New Jersey bankruptcy should have been allocated at least one-third to him. That's the argument? That's correct. You told me that it was not paid pursuant to any judgment of the bankruptcy court in the New Jersey bankruptcy. Is that correct? That's correct. Is it also correct that one of the other brothers has made this same allocation argument that Ronald is now seeking to make and lost in the Third Circuit? That's correct. But you'd like us to get to the merits and disagree with the Third Circuit on that principle of law? The opinion of the Third Circuit seemed to suggest that Rudolph Isley, the other brothers, his ability to recover should have been by suing the brother that got too much. The dead brother. The dead brother. Suing the state of the dead brother. I disagree with that completely. I don't even know that such a right exists. I've never seen a case where the remedy is not against the government for applying the money wrong but against the taxpayer that got the money. I've never seen such a lawsuit, never heard of one, and it makes no sense to me. Well, as I understand the Third Circuit, they're not saying that the government misallocated it. They're saying that the government allocated it as it had a right to do, but there's an equitable right of recovery against the brother for whose benefit it was made. I guess that's right. I don't see the Third Circuit having said the government did anything wrong. I'm seeing the Third Circuit as saying, well, your brother might have gotten excessive benefit here based on what the IRS did and had a perfect right to do, and if you want to talk to your brother or your brother's heirs, you'll go ahead and do that. I guess that's what the Third Circuit decided, but I don't view that as being. . . I don't want to decide the substance of our claim here, which the district court didn't do. I think that there is nothing that would arise in the equitable right to pursue the brother that would cause us not to be entitled to pursue the government at the same time, on that theory at least, and be allowed to prove that theory and the underlying facts if we can. And what am I to think about Margaret? You heard my questions with respect to Margaret. What's your response as to why Margaret's entitled to something here? I think you're exactly right. Margaret's co-publisher rights were not transferred away from her in the property settlement. Those were sold. There is evidence in the record that establishes that the value of the publishing rights, and this is just a couple years after the divorce settlement, was roughly a fourth of the total value of all of the royalty interests. And so her assets were sold, and the government admits there's no res judicata effect, and she has standing to . . . Her role was simply as a claimant, right? She wasn't a co-debtor in the bankruptcy. She was not a co-debtor. She was a claimant with respect to her alimony payments. Right. I hadn't heard of that, in fact, until the argument by the government here, but it's not been presented at any point previously. Well, thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and we will hear argument next in United States v. Fernandez. Counsel for appellate, you may proceed. Thank you.
judges: Goodwin, O'scannlain, Fletcher